UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEMPA 3105, LLC, KEMPA AND ASSOCIATES, and DYNAMIC RENTALS, INC., | No. 19 CV 8118 |
| Plaintiffs, | Judge Manish S. Shah |
| v. | |
| SAUK VILLAGE, ILLINOIS, and ILLINOIS HOME INSPECTIONS, LLC, | |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

Plaintiffs allege that Sauk Village and Illinois Home Inspections, LLC violated the Fourth Amendment by conducting inspections of residential property without consent or a warrant and that defendants were unjustly enriched from inspection fees and fines. Plaintiffs also allege that the Village's current inspection ordinance violates the Illinois Constitution. Although the complaint plausibly alleges instances of unconstitutional searches, it fails to state a claim for municipal liability, and its claim against the private entity suffers from pleading deficiencies. The complaint is dismissed without prejudice.

## I. Legal Standard

A complaint must contain a short and plain statement that plausibly suggests the violation of a legal right. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–58 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009). At the motion to dismiss stage, I accept the plaintiffs' factual allegations as true and draw all

reasonable inferences in their favor, but do not accept bare assertions, conclusory statements, or legal conclusions. *Iqbal* at 678–79. Documents attached to the complaint and information subject to judicial notice, like municipal ordinances, can be considered. *Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012); *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977); Fed. R. Evid. 201(b).

## II. Facts

In August 2018, Sauk Village enacted a program requiring residential property owners to obtain a certificate of re-occupancy in order to sell or rent their property. [53] ¶ 15; [53-1]; [53-2]; [53-3].[1] The Village charged a $50 application fee, which could be paid by the property owner or their designated agent, like a property management company. [53-2] at 2; [53-3] at 2. The Village selected a building inspector licensed by the Village and the State. [53] ¶ 18; [53-2] at 2. The inspector contacted the owner or their agent to schedule the inspection, which cost $300, paid directly to the inspector. [53] ¶ 17; [53-3] at 2. The inspector followed property standards established by the Village, which incorporated international building standards. [53] ¶¶ 19, 22; [53-3] at 3–6. The inspector provided an inspection report, which the property owner submitted to the Village. [53] ¶ 19; [53-3] at 3. If the property failed inspection, the building inspector worked directly with the owner to re-inspect the property, which

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers are taken from the CM/ECF header placed at the top of filings.

cost $50, paid directly to the inspector. [53] ¶ 19; [53-3] at 2–3. The Village prohibited any change in occupancy without a certificate. [53-3] at 2.[2]

Illinois Home Inspections, LLC, owned by Jay Rogers, performed inspections under the program. [53] ¶¶ 14, 20, 28–29, 33–34. The company was not under contract, and its representatives were not government employees. [53] ¶ 20. Plaintiffs allege, however, that the Village and the company had an understanding that the company would conduct warrantless inspections without voluntary consent. [53] ¶ 33. Plaintiffs also allege that the company was not properly licensed to perform home inspections. [53] ¶ 21.[3] In May 2019, an Illinois Home Inspections representative inspected a rental property on Sauk Trail owned by Kempa 3105, LLC. [53] ¶ 35; [53-4]. While the inspector marked "occupancy approved," the property failed inspection due to a missing furnace and plumbing permit. [53] ¶ 35; [53-4]. The following month, an Illinois Home Inspections agent re-inspected the property and denied occupancy for a missing plumbing permit. [53] ¶ 36; [53-5]. Plaintiffs allege that these missing permits were not required. [53] ¶¶ 35–36. The Village refused to issue a certificate of re-occupancy, and Kempa 3105 lost rental income and paid unnecessary maintenance and repair costs. [53] ¶¶ 31, 37. The Village also refused to issue a certificate of re-occupancy for a property on Brookwood Drive owned by Dynamic Rentals, Inc. and managed by Kempa and Associates, even though the property had passed inspection.

---

[2] Plaintiffs do not allege that the original policy imposed fines on violators. [53]; [53-1]; [53-2]; [53-3].

[3] Illinois Home Inspections' Exhibit A, described as evidence of Rogers's licensing certification, was not filed on the docket. *See* [58] at 2, n.1.

3

[53] ¶¶ 11–12, 31, 39. Plaintiffs allege Illinois Home Inspections wrongfully refused to approve properties owned by Kempa 3105 and Dynamic Rentals multiple times, preventing them from obtaining certificates of re-occupancy. [53] ¶ 31. Kempa 3105 and Dynamic Rentals consequently paid unnecessary inspection-related costs and were unable to sell or rent their properties. [53] ¶¶ 23–26, 32. Properties managed by Kempa and Associates were also subject to inspections under the certificate program. [53] ¶¶ 27, 30, 32.

In December 2019, Kempa 3105 filed this lawsuit. [1]; [53] ¶ 40. In response, the Village issued a certificate of re-occupancy for the Brookwood Drive property and adopted two new inspection ordinances in January 2020. [53] ¶¶ 39, 41. The ordinances contained more procedural safeguards for property owners, like enhanced notice, consent, and appeal requirements. [53] ¶¶ 46–49, 53–54. For rental properties, the new ordinance codified a procedure to obtain a warrant if the property owner or agent refused to consent to an inspection, and owners could now appeal an inspection. [53-6] at 5–6. If property owners failed to notify the Village of a change in tenancy, they could lose their certificate of occupancy and pay a fine. [53-6] at 5. The inspection ordinance for single-family homes did not require a warrant for all inspections in the absence of consent and prohibited the sale of property without a certificate. [53] ¶¶ 50, 58; [53-7] at 4–6. Both ordinances required the property owners to pay administrative fees and the costs of the inspection. [53-6] at 6; [53-7] at 5. The ordinances also permitted the same types of building inspectors: qualified Village

employees, building, zoning, code, or fire inspectors, or other persons contracted by the Village. [53] ¶¶ 44, 51.

In late January, Kempa and Associates, a property management company, notified the Village of an owner's intent to sell a property on 223rd Street. [53] ¶¶ 55–56. An Illinois Home Inspections representative contacted Kempa and Associates, performed the inspection, and failed the property. [53] ¶¶ 59–60; [53-8]. Plaintiffs allege that the report failed to identify the specific code violations as required by the ordinance. [53] ¶ 60; [53-7] at 5. Kempa and Associates appealed the denial, but the Village never responded, and the property could not be sold. [53] ¶¶ 61–63. Plaintiffs allege that Illinois Home Inspections did not comply with the ordinances. [53] ¶ 65.

In February 2020, plaintiffs filed a second amended complaint. [39]. A month later, the Village amended the inspection ordinances again. [53] ¶¶ 66–70; [53-9]. The current ordinance, which combines the rental and single-family ordinances, does not prohibit the sale of a home without a certificate of occupancy. [53-9] at 6. Failing to obtain a certificate is punishable by a monetary fine. [53-9] at 14–15. Inspections can still be performed by building inspectors, and Illinois Home Inspections remains authorized to perform inspections. [53-9] at 4, 8; [53] ¶ 71. In late May, plaintiffs filed a third amended complaint. [53]. Defendants Sauk Village, a non-home-rule unit of local government, and Illinois Home Inspections, LLC now move to dismiss. [53] ¶ 13.

## III.  Analysis

The Consititution limits federal court jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. To invoke the court's jurisdiction, a

plaintiff must show that 1) it suffered an actual or imminent injury that was concrete and particularized, and not conjectural or hypothetical; 2) the defendants' alleged misconduct caused the injury; and 3) a favorable ruling would likely redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The defendants argue that one of the plaintiffs, Kempa and Associates, does not have standing to sue over the inspections because it was a property manager and not an owner of the searched permises.[4] But business operators have a reasonable expectation of privacy in commercial property, *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 311 (1978), particularly in non-public spaces, which, like a home, require consent or a warrant to search absent exigent circumstances. *See v. City of Seattle*, 387 U.S. 541, 545 (1967). Ownership is not dispositive: one who "lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of [their] right to exclude." *Rakas v. Illinois*, 439 U.S. 128, 143, n.12 (1978) (citation omitted).[5]

As managers of private residences, Kempa and Associates had a right to exclude people from the premises and, in turn, a reasonable expectation of privacy in the property on 223rd Street. An allegedly unconstitutional search of that premises

[4] Because defendants assert a facial and not factual challenge to standing, the same legal standard under Federal Rule of Civil Procedure 12(b)(6) applies to defendants' jurisdictional claim under Federal Rule of Civil Procedure 12(b)(1). *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

[5] A warrant is not required to search "pervasively regulated" industries. *See Owner-Operator Independent Drivers Association, Inc. v. United States Department of Transportation*, 840 F.3d 879, 893 (7th Cir. 2016) (citations omitted). Residential property managers, like hotel operators, do not fall within this exception. *See id.* at 893–95 (citing *City of Los Angeles v. Patel*, 576 U.S. 409 (2015) and noting that only four industries currently fall within this warrant exception: liquor sales, firearm sales, mining, and automobile junkyards).

injured its ability to exclude people from the premises, so the complaint adequately alleges a concrete invasion of a cognizable interest particularized to the property manager. The inspection regime implemented by the Village and Illinois Home Inspections caused the search to occur and a judgment in the property manager's favor, even if only nominal, would redress its constitutional injury.[6] Defendants' additional argument that Kempa and Associates should be dismissed because the property owners can vindicate their own interests is not a jurisdictional one—it invokes the doctrine sometimes called prudential standing and asks whether the named plaintiff is the appropriate party to bring the case. That argument fails because Kempa and Associates seeks to enforce its own constitutional rights, not someone else's. *See MainStreet Organization of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 746–47 (7th Cir. 2007); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 n.3 (2014) (calling "prudential standing" an inapt label and questioning the proper placement of the doctrine of "third-party standing"). This court has jurisdiction over the property manager's claim.

Under Section 1983 of the Civil Rights Act, an injured party can sue a "person" who, under color of law, deprives the plaintiff of constitutional rights. 42 U.S.C. § 1983. Municipalities can be "persons" under the act, but are liable only if the government's policy or custom caused the constitutional violation. *Monell v.*

---

[6] Unlike Kempa 3105 and Dynamic Rentals, which lost money from the inspection fees, repair costs, and inability to transfer their property, [53] ¶¶ 24, 26, 32, 37, Kempa and Associates fails to allege any financial harm. Under the second ordinance, owners—not their agents— were responsible for fees. [53-7] at 5. And Kempa and Associates' allegation that they "suffered damages" because the property on 223rd Street did not close is too conclusory to infer financial harm without more information. [53] ¶ 63.

*Department of Social Services of City of New York*, 436 U.S. 658, 690, 694 (1978). Private parties who act under color of law can also be sued, but private corporations are not liable unless, like a municipality, their policy or custom caused the violation. *See Gaston v. Ghosh*, 920 F.3d 493, 494–95 (7th Cir. 2019).

The Village and Illinois Home Inspections argue that the searches were not performed under color of law; an inspector working for a private company entered the premises to conduct the inspections. A private person acts under color of law if the conduct is "fairly attributable to the State," *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). That attribution is a fact-based assessment, but occurs only in limited circumstances. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 816 (7th Cir. 2009); *Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019). Here, plaintiffs cannot show that the Village delegated a public function. *See Manhattan Community Access Corporation v. Halleck*, 139 S.Ct. 1921, 1928–29 (2019). Very few functions fall into this category, and while the Village may have delegated an inspection function, plaintiffs make no argument that building inspection is a function "traditionally and exclusively" reserved to government. *See id.* Nor do plaintiffs show that the Village directed or controlled the actions of Illinois Home Inspections. *See Camm*, 937 F.3d at 1105. While the Village selected the inspector, coordinated the fees, and set the property standards, [53-2] at 2; [53-3] at 3–6, the allegations indicate that the inspector applied the standards independently and did not consult with or report to Village officials. *See Payton v. Rush-Presbyterian-St. Luke's Medical Center*, 184 F.3d 623, 628 (7th Cir. 1999). Plaintiffs'

8

allegations suggest the Village deferred to, if not rubber-stamped, the expertise of private industry in applying the standards to inspected properties. *See* [53] ¶¶ 19–20, 34. This is not an allegation of municipal control that plausibly suggests that the individual inspector acted under color of law.

An allegation of joint action or conspiracy between public and private actors can be sufficient to plead § 1983's "under color of law" requirement. *See L.P. v. Marian Catholic High School*, 852 F.3d 690, 696 (7th Cir. 2017); *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019). But "mere allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss." *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998); *Spiegel*, 916 F.3d at 616. Plaintiffs' allegation that the Village and Illinois Home Inspections "entered into an understanding" that Illinois Home Inspections "would perform the required inspections despite not having received voluntary consent from property owners or their agents and without applying for or receiving warrants to conduct such inspections," [53] ¶ 33, is the kind of bare conclusion that is insufficient. And although there are allegations that the Village selected and authorized Illinois Home Inspections to carry out the inspection program, those allegations fall short of plausibly suggesting that the Village and the private company were together willful participants in a plan to conduct unconstitutional searches. As discussed above, the Village did not delegate a governmental function and did not exercise control in a manner suggesting state action, and as discussed below, the complaint fails to adequately allege a widespread custom of unconstitutional conduct.

9

Together these failures also amount to a failure to plead a conspiracy that assigns state-actor status to Illinois Home Inspections.

Moreover, although not an argument raised by defendants, the complaint does not plead that Illinois Home Inspections acted pursuant to a corporate policy or custom with the requisite culpability to cause a constitutional injury. Plaintiffs named a private corporation not an individual inspector and as such they were required to clear the *Monell* hurdle as to the company as well as to the Village.

And as for the Village, the complaint fails to allege a plausible claim for municipal liability. Plaintiffs must allege 1) a municipal action, which can be an express policy, a widespread custom, or an act by an individual with policy-making authority; 2) culpability, meaning at minimum, deliberate conduct; and 3) causation, meaning the municipal action was the "moving force" behind the constitutional injury. *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019) (citing *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404–07 (1997)), *reh'g and suggestion for reh'g en banc denied* (Sept. 16, 2019). Plaintiffs allege that the Village's inspection ordinances lacked adequate constitutional safeguards—the ordinances omitted requirements that then led to unconstitutional searches when the inspection regime was applied to plaintiffs. Objecting to omissions in an express policy is treated like a widespread-custom claim and requires showing that the conduct was so widespread as to constitute a governmental custom or practice. *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). More than three violations must be alleged. *Hildreth v. Butler*, 960 F.3d 420, 427 (7th Cir. 2020). This frequency of conduct is

10

required because an omission could be random or inadvertent and not reflect deliberate conduct. *See J.K.J. v. Polk County*, 960 F.3d 367, 378 (7th Cir. 2020). For example, although the first ordinance did not reference a warrant procedure, it did not disclaim warrants either. The Village could very well have sought warrants even though the ordinance omitted mention of them. So to hold the Village liable for warrantless nonconsensual searches, plaintiffs must allege frequent conduct that supports an inference of deliberate municipal custom.

The Fourth Amendment protects the privacy and security of individuals against the arbitrary exercise of government power by prohibiting "unreasonable searches and seizures." U.S. Const. amend IV; *Camara v. Mun. Court of City & Cty. of San Francisco*, 387 U.S. 523, 528–29 (1967). The protection hinges on reasonableness: whether the plaintiff had a reasonable expectation of privacy and whether the search was reasonable. *See Narducci v. Moore*, 572 F.3d 313, 319 (7th Cir. 2009). To establish a reasonable expectation of privacy, plaintiffs must have exhibited a subjective expectation of privacy, and that subjective expectation must be objectively reasonable based on societal norms. *Katz v. U.S.*, 389 U.S. 347, 361 (1967) (Harlan, J. concurring). "Individuals have a particularly high expectation of privacy in their homes." *Bentz v. City of Kendallville*, 577 F.3d 776, 782 (7th Cir. 2009) (emphasis omitted). Consequently, local government inspections of private residences—also known as administrative searches—require appropriate safeguards, like consent or a warrant, to protect Fourth Amendment rights (unless an exception to the warrant requirement applies). *See City of Los Angeles, Calif. v. Patel*, 576 U.S.

11

409, 419–20 (2015). Consent must be given voluntarily. *Schneckloth v. Bustamonte*, 412 U.S. 218, 223 (1973). Whether consent was coerced depends on the totality of the circumstances. *Id.* at 226. Consent obtained under duress is improper. *See Camara*, 387 U.S. at 532 (no voluntary consent when plaintiff faced the threat of a criminal conviction); *See v. City of Seattle*, 387 U.S. 541, 542, n.1 (no voluntary consent when plaintiff faced the threat of a monetary fine, jail time, or both).

Because plaintiffs assert an as-applied challenge, the analysis is limited to whether the Village's inspection system was unconstitutional as applied to the facts of this case. *See St. Joan Antida High School Inc. v. Milwaukee Public School District*, 919 F.3d 1003, 1016 (7th Cir. 2019). Under the first ordinance, two properties—one owned by Kempa 3105 and one owned by Dynamic Rentals—were inspected. [53] ¶¶ 11–12, 31, 35–36, 39. It is plausible that Kempa 3105 and Dynamic Rentals consented under duress because the inspections were required in order for them to sell or rent their property. [53-3] at 2. This consequence robbed plaintiffs of any meaningful choice and the ability to refuse an inspection. Because their consent was involuntary and the Village's original policy had no warrant requirement (which provides adequate safeguards in the absence of consent), plaintiffs have sufficiently alleged that these two administrative searches were unconstitutional. *See Camara*, 387 U.S. at 528–29. For the same reasons, it is plausible that Kempa and Associates' consent for the inspection at their property on 223rd Street was involuntary because the second ordinance for single-family homes lacked an explicit warrant requirement

and prohibited the sale of property without a certificate of occupancy. [53] ¶¶ 50, 58; [53-7] at 4–6.

Nevertheless, three incidents are insufficient to establish liability under *Monell*. *See Hildreth*, 960 F.3d at 427. Plaintiffs' allegations that their rights were violated on "multiple occasions," [53] ¶¶ 24, 31, is too ambiguous to suggest plaintiffs were subject to more than three unconstitutional inspections. More allegations of misconduct are required to show that the Village (or Illinois Home Inspections, for that matter) had a deliberate and widespread practice of violating the Fourth Amendment. The absence of a warrant requirement in the original ordinance does not by itself suggest that the Village conducted warrantless searches. The Village could have mechanisms outside the ordinance to prevent constitutional violations when "applied" to citizens. Because plaintiffs could clarify the instances of misconduct and cure these deficiencies, their Fourth Amendment claim against Sauk Village is dismissed without prejudice. *See Lee v. Northeast Illinois Regional Commuter Railroad Corporation*, 912 F.3d 1049, 1052–53 (7th Cir. 2019).

Although plaintiffs have amended the complaint a few times, this is the first motion to dismiss to reach resolution and it is possible that plaintiffs can bring a claim against an individual inspector with allegations that he acted under color of law or against the company under a *Monell* theory of liability. The dismissal of the federal claim against Illinois Home Inspections is without prejudice.

In the absence of federal claims, district courts should relinquish jurisdiction over state-law claims unless an exception applies. *Refined Metals Corporation v. NL*

13

*Industries Inc.*, 937 F.3d 928, 935 (7th Cir. 2019). Plaintiffs' unjust enrichment claim is based on the same conduct as their constitutional claim. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011); *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (1989). Because a claim stands or falls with its related claim, it is "obvious" that plaintiffs' unjust enrichment claim fails and is dismissed without prejudice for failure to state a claim. *See Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) (describing three exceptions to relinquishing supplemental jurisdiction).[7] Plaintiffs' state constitutional and statutory claim is dismissed without prejudice under 28 U.S.C. § 1367(c)(3).[8]

---

[7] Even though the header for plaintiffs' unjust enrichment count did not include Illinois Home Inspections, the body of the count did, putting the defendant on sufficient notice of the allegation. *See* Fed. R. Civ. P. 8(a). Plaintiffs' caption named all the parties, meeting the requirements of Federal Rule of Civil Procedure 10.

[8] To the extent a state law constitutional and statutory claim may be briefed again, the parties should address whether Article VII, Section 7 of the Illinois Constitution provides a private right of action (for damages, declarative, or injunctive relief) against a municipality when the statute at issue, 65 ILCS § 5/11-13-15, prohibits one under Illinois law. *See Ryan v. City of Chicago*, 439 Ill.Dec. 212, 217 (Ill.App.1 Dist. 2019).

## IV.    Conclusion

The defendants' motions to dismiss, [56] and [57], are granted. Plaintiffs' third amended complaint, [53], is dismissed without prejudice. Plaintiffs have leave to file an amended complaint by September 14, 2020. If an amended complaint is not filed, the dismissal of the federal claim will convert to a dismissal with prejudice and the clerk will enter a final judgment.


ENTER:

Manish S. Shah
United States District Judge

Date:  August 24, 2020